JOHN A. BOYDEN AND WIFE v. S. A. CLARKE.

*Vendor and Vendee—Contract for Sale of Land—Privity—*
*Estoppel, Equitable—Diligence—Negligence.*

1. Neither the vendor nor the assignee of the vendee in an executory contract to convey land (the assignee having received the legal title from vendor) is estopped by false representations made by the vendee, while in possession, to a third party in relation to the boundary of the tract.

2. One who invokes the doctrine of equitable estoppel must show, not only that he acted in good faith, but that he used reasonable diligence to ascertain the truth of the facts upon which he acted.

This was a CIVIL ACTION for trespass upon land, tried at the Fall Term, 1891, of the Superior Court of WATAUGA County, before *Bynum, J.*

The plaintiff offered in evidence a grant from the State to Richard Greene, dated November 26th, 1802; then *mesne* conveyances from Richard Greene to Isaac Greene; from Isaac Greene to Elisha P. Miller; from the executor of Elisha P. Miller to James Steele; from James Steele and wife to Lewis Harris, and from Lewis Harris and wife to *feme* plaintiff, the last-named deed bearing date 11th day of October, 1877.

Three issues involving the title, the trespass and damage were framed and the jury found in response to the first that the plaintiff was not the owner, thus disposing of the case.

The exceptions grow entirely out of the question whether the representation of a vendee of an adjacent tract to that bought by plaintiff and declared on in the action, that the common corner of the two tracts was at a certain point induced the plaintiff to buy, and if he was misled by it, whether the assignee of the vendee, who subsequently paid the vendor the purchase-money and took the title to himself, was estopped to deny the truth of the representations. The other

material facts are stated in the opinion.    The plat, not being necessary to an understanding of the questions discussed, is not printed.

*Mr. R. H. Battle,* for plaintiff.
*Mr. W. C. Newland,* for defendant.

AVERY, J.: The defendant Clarke bought the equitable interest of one Sherill, which the latter had acquired by a bond for title from James Harper and the payment of a part of the purchase-money.    Clarke subsequently paid the residue of the purchase-money to the original vendor Harper, and took title to the tract of land, which the jury have found (under instructions as to locating the boundaries, which are not excepted to) covered the territory on which the trespass is alleged to have been committed.    Their finding, in view of the instructions under which they acted, must be considered by us as conclusive of the fact, that the true location of the plaintiff's beginning corner is at pine No. 1 on the plat, as contended by the defendant.

The plaintiff claims, however, that the defendant is estopped to deny that the common corner of his and the defendant's land, which is his own beginning corner, is at the point designated as pine No. 2 on the plat.    This question is raised by a request to the Court to charge the jury, that if at the time when the plaintiff John A. Boyden bought the adjacent tract for his wife the *feme* plaintiff, or before Sherill, the defendant's assignor, who was in possession as the vendee of Harper, told him that the common corner of the two tracts was at the point indicated on the plat as pine No. 2, and therefore Boyden, believing the representation to be true, bought the land from Harris and paid the money for it, then the defendant Clarke would be estopped by the conduct of his assignor to deny the truth of the representations.

The testimony of Boyden, which bore upon this point, was as follows: "I had the land surveyed when I bought it in 1877; W. W. Sherill showed me the corner at pine No. 2; Sherill was then claiming the adjoining lands to this tract under James Harper, and was in possession (these lands are designated in the plat as James Harper's grant, thirty-eight acres, 1848; James C. Harper, fifty acres granted 1848, and David Greene, twenty-five acres, granted 1847); these are the lands that Clarke is claiming under Sherill since that date."

The Court was not bound to give the instruction embodied in this prayer, because if we concede that there was such a privity in estate between Sherill and Clarke that the misleading representation of the former would operate in any case to estop the latter, it would be essential to first show that Boyden acted upon them and placed himself in such a position that he must suffer loss unless they are treated as true and binding on Clarke. 2 Herman on Estop., § 945; Sedgwick & Waite, § 843; Bigelow on Estop., pp. 570, 638, 641; 2 Pom. Eq. Jur., § 812. But the plaintiff insists that as he bought immediately after Sherill pointed out the corner to him, there was evidence tending to show that he was misled by the statement, and that it was error to refuse to submit that question to the jury, and he is entitled to have the benefit of the point under another exception and his second assignment of error.

But passing over this question, or conceding, for the sake of argument, that if a privity in estate was shown to exist between Sherill and Clarke, such that the representation of the former, if acted on by Boyden, would estop the latter, it would have been the province of the jury to determine, whether the inference could be fairly drawn from the fact that Boyden purchased immediately after his interview with Sherill, that he was induced by the statement of Sherill to make the purchase, it would be manifestly immaterial

whether Boyden bought because he was misled as to the location, or for some other reason, if in contemplation of law Sherill and Clarke did not sustain such relations to each other as that the conduct of the one would bind or restrict the rights of the other.   The defendant holds under James Harper, who conveyed to him all his right, title and interest in the land.   Harper's lien could not have been impaired by the mistake or wilful misrepresentation of his vendee so as to deprive him of his right to sell under a decree for specific performance all of the land covered by the description in his contract.   Clarke was the assignee of the equitable interest of Sherill, but had no notice of the representation made to Boyden.   Although Clarke bought the equitable interest of Sherill, he does not hold in subordination to him, but to Harper, and is no more bound or restricted than was Harper, the vendor of Sherill, because from the very nature of the transaction, Harper's security would be impaired unless he could give the purchaser either from Sherill or at judicicial sale a good title, and thus induce him to pay the purchase-money for the whole tract.   It would be giving very great latitude to the doctrine of estoppel *in pais* if the mistaken or fraudulent statements of a vendee, occupying land under a contract of sale, were allowed to have the effect of establishing title by estoppel, as against the original vendor and the assignee of the original vendee, after the vendor had performed his contract by conveying to the assignee, both grantor and grantee being ignorant of the fact that any misrepresentation had been made.

"Privies," says Lord COKE, "may be comprehended under two general heads, privies in deed and privies in law ; but are generally said to be of four kinds, 1st, privies in estate, as donor and donee; 2d, prives in blood, as heir and ancestor ; 3d, prives in representation ; 4th, privies in tenure, as landlord and tenant.   Coke on Lit., 271*a*."   But while we are dealing here with a species of estoppel, which is the creature

of the courts of equity and operates between the imme-diate parties and their privies, whether by blood, by estate or by contract (2 Pom. Eq. Jur. § 813) it nevertheless, in this particular instance, necessarily involves principles origina-ting in the doctrine of tenures, because of the contention that there is a privity of estate. In law, the vendee is the mere tenant of the vendor, while in equity the vendee is the owner, and the vendor holds the legal estate to secure the payment of the purchase-money. The courts of equity have never established the principle that the tenant could by his conduct *in pais* diminish his lord's estate by an estoppel operating on the superior, nor have they held that the ven-dee, because he is esteemed the owner in equity, could dimin-ish the security of the vendor by his declarations, whether made ignorantly or fraudulently, or whatever might be the effect of such representation on others.

Assuming that Clarke now holds a deed from James Har-per with full covenants of warranty and seizin, and that Boyden is declared to have title by estoppel on account of the conduct of Sherill, Clarke, as an innocent purchaser, would be placed in a very strange and unfortunate position. It will be conceded that he could not recover for the loss of the strip of land from Harper or his heirs, because the mis-representations of Sherill, the tenant in law and vendee in equity of Harper, could not bind him. If he should sue Sherill for damage, the all-sufficient answer to his demand would be that the assignment involved no warranty of title on the part of the latter. We cannot concede that such is the doctrine of equitable estoppel.

Where, however, a person invokes the aid of an equitable estoppel, on the ground that he has been misled, he must not only have acted in good faith, but it must appear that he has shown reasonable diligence in trying to ascertain the truth. 2 Pom. Eq. Jur., § 813; *Thomas* v. *Mosher*, 20 N. J. Eq., 257;

*Royce* v. *Watson,* 73 N. Y., 597; *Wilcox* v. *Howell,* 44 N. Y., 398; *Moore* v. *Bowman,* 47 N. H., 494.

If a prudent person, in the exercise of ordinary care and occupying his position, would, by prosecuting his inquiries further or extending his investigations, have ascertained the truth before acting, relief would be refused on the ground of negligence. Applying this principle to our case, we find that the plaintiff's deed described his land as beginning on a white-pine *stump,* it being the stump of a white-pine tree, which was the beginning corner of what is known as "the old Isaac Greene one hundred-acre tract of land, said corner being about thirty feet above the turnpike road, leading from Blowing Rock to Lenoir, and some fifty or sixty yards north of E. C. Pruden's cottage residence at Blowing Rock, and said corner being some twenty or twenty-five steps north-east of a bluff of rocks situated about from five to eight steps north of said turnpike road, and then runs east 148 poles to a cucumber on Alexander Martin's old line, the cucumber now being down; then north 108 poles to a red or Spanish oak on said line; then west 148 poles to a stake; then to the beginning, said tract of land being known as the old Isaac Greene place or tract."

It appears, from the testimony of Sherill, that when the defendant Clarke proposed to buy, a survey was made preliminary to the purchase, and in order to locate the land which Sherill had contracted to buy from Harper, Clarke caused a survey to be made of the calls of the old deed, under which Boyden claimed. But instead of accepting as true the statements of the proper location of the pine at the stump, as claimed by the plaintiff, Clarke took the precaution to begin at the third corner, a red-oak, which was still standing, and to reverse the calls and thereby fix the true location of the beginning corner. The plaintiff John A. Boyden, who was present when the surveyors passed around to the last line, seems to have conceded that the line then run (and now found

by the jury to be the true line) was properly located, claiming only that he held beyond it the land under fence and in his possession up to the present time.

Guided by the principle we have stated, it is manifest that a Court would not grant relief to the plaintiff, as against the defendant Clarke, when he might have ascertained the true location by running from a marked corner, as Clarke did. There was, therefore, no error in refusing to instruct the jury as to the estoppel *in pais.*

SHEPHERD, J. (dissenting): I concur in the conclusion that, under the circumstances, there was no estoppel, but I do not assent to the reasoning of the Court upon the other points discussed in the opinion.

*Per curiam.*                                     Affirmed.