This is an action to recover damages for trespass by defendant on the land of the plaintiff, for timber cut and removed from said land and to vacate a deed dated 17 March, 1899, or to have it corrected.
It appeared on the trial and was admitted by all parties, that the plaintiff had conveyed all the timber on the land embraced in the deed of 17 March, 1899, to the defendant, by deed dated 28 February, 1887, of a size above 13 inches diameter at the stump; and that the time in which defendant was to cut and remove said timber had not expired by some months. The allegation of the plaintiff is that on 17 March, 1899, one Freeman, agent of the defendant, came to him in the store of one Bowen, and stated to him that since the date of the first deed, 28 February, 1887, other timber on the land had grown to thirteen inches and proposed to buy that growth; or, in other words, to buy all the timber on said land above 13 inches; that defendant did not want any further time in which to get said timber off the land — said that it would all be taken off by June, which was within the time named in the original deed. The original deed of February, 1887, authorized the defendant to put such tramroads on said land as might be necessary to remove the timber therefrom.
The plaintiff alleges that the contract was to sell defendant the growth of the timber since the date of the first deed, to 13 *Page 357 
inches, for $25.00, and that this was the only contract that was made. The case rests on the plaintiff's testimony, which is as follows:
"The bargain between me and Mr. Freeman, the defendant's agent, for the sale of the timber under the deed of 17 March, 1899, was made at Horace Bowen's store. Freeman said that the company would cut the timber I had sold to it by deed of 13 June, 1887 (which was same sold in last deed (479) before the time went out on 13 June, 1899), and that the company didn't want any more time, but that there was a lot of timber on the land that had grown up over thirteen inches at stump since that deed was executed, that they could not cut under that deed, and that the company wanted to buy the growth that had grown up since 13 June, 1887. I thought they would break it to pieces in cutting the other, so I agreed to sell it. I told him I would not sell him any more time on the other timber because he wouldn't offer me as much as he was offering others in the neighborhood. He said all right he didn't want anything but the growth, as he already had the balance. When we bargained, I went home to get my wife to sign the deed. It was about one-half or three-fourths of a mile. He went along with me to where the log was across the path, where we could not pass. He was in a buggy. I walked. I left him at the log to write the deed while I went to the house for my wife. When I got back he had the deed written. It was late in the evening, the sun was about an hour high. His horse was so restless he wouldn't be still a minute. He said to me, `Make haste and sign it; it is late and I am in a great hurry. I've got to go to Washington tonight. This horse hasn't got sense enough to stand still.' My son was off some distance cutting wood. He handed me the deed to sign and asked me if I wanted to read it. I told him that if it was like the bargain he made it was all right. He said it was just as the bargain was. That he would have all the timber cut off by June and before. I thought he was telling me the truth, and I trusted to his honesty. He paid me only $25.00 for the timber passed in this deed and didn't read it. I can not read good. I didn't have my glasses and when I tried to read without them the lines ran together. I can read print better (480) than writing. The timber is described in the printed part of the deed. I can read the words of the printed part of the deed as the counsel moves his pencil to them, but the lines at once run together when he stops (counsel here took the deed, pointing with his pencil to portion of it and witness's statements *Page 358 
were in reference to the principal portions of the paper). Freeman was notary and took my acknowledgment and examination of wife. I thought when I signed the deed it did not convey all my timber, and was misled and induced to sign it by the statement of Freeman that it was as we bargained."
The court thought this testimony sufficient evidence of fraud to submit the question to the jury, and this is the question presented by the appeal.
Frauds affecting the validity of deeds are of two kinds — fraud in the factum, and fraud in the treaty. This distinction, though not as material now as formerly, is still material in some cases. Medlin v. Buford, 115 N.C. 260. Besides the importance of the distinction pointed out in Medlin v. Buford, it was important before the junction of legal and equitable jurisdiction in the same Court, to determine the jurisdiction, as courts of law had jurisdiction of frauds in the factum, but not of frauds in the treaty which were cognizable alone in courts of equity. This made it important to determine, before commencing the action, whether it was fraud in the factum or fraud in the treaty, as the proper Court in which to bring the action depended on this distinction. And while the distinction is important, it is not of that importance that it formerly was, as one is sure now to get into the right Court, if there is fraud whether in the factum or in the treaty. In this case, while there may be some slight evidence of fraud in the factum — such as the unsuitable place where the deed was executed, the apparent haste with which it was done, the remarks of defendant's agent to hurry and sign the deed — that his horse did not (481) have sense enough to stand; that it was then late and he had to go to Washington that night, a distance of 18 miles. Besides, it seems to us that Freeman was doing a little too much. He was agent of the defendant company and an officer of the law. When the deed was signed he moved "the previous question" and by taking the acknowledgment and privy examination, undertook to "lay the matter on the table." We do not say that he could not in law take this acknowledgment and privy examination, but these things, taken in connection with the fact that the deed was not read to the parties making it, is some evidence we think of fraud in the factum.
But leaving out of the case these suspicious circumstances we have just stated, it seems to us to be a case that should have gone to the jury upon the evidence of fraud in the treaty. In McArthur v. Johnson, 61 N.C. 317, the Court held that plaintiff could not recover, and that was a case very much like this, except there was no question in that case but what the plaintiff *Page 359 
could read. In this case the evidence leaves the question whether plaintiff could read in doubt. And if this was a material question in the case it should have been left to the jury. The case of McArthur v. Johnson was brought in the Superior Court of law before it had equitable jurisdiction, and the Court held that it was not a case of fraud in the factum, and the plaintiff could not recover. But in the discussion of the case the Court lays down the distinction between fraud in the factum and fraud in the treaty; and while the Court did not decide that that case was a case of fraud in the treaty it seems to us that the definition given in the discussion of the case shows that it was. And the same doctrine is held in Gant v. Hunsucker,34 N.C. 254; 55 Am. Dec., 408, while the more recent case of Medlin v. Buford, 115 N.C. 260, which seems to be put largely on McArthur v. Johnson, clearly shows (482) that this case is one of fraud in the treaty, if plaintiff's evidence is to be believed; and we have nothing to do with that, as it is purely a question for the jury.
In Medlin v. Buford, the plaintiff signed a paper upon the representation of Davis that it was a power of attorney authorizing him to raise $1,000, to invest for her benefit, at a profit of $25 per month. The plaintiff in that case could read, but did not read the deed; was imposed upon by the false representation of Davis as to the contents of the deed, and the Court held that this was not a fraud in the factum, and as third parties who were innocent of the fraud had become interested, the plaintiff could not recover. But it is distinctly held that it was a fraud in thetreaty, and would be declared void as to Davis, and also as to Mrs. Buford, if she or her attorney (Mr. Cutler) had knowledge of the fraud.
The distinction between fraud in the factum and fraud in the treaty seems to be very narrow, but still it exists and it seems still important that it should be observed as in the case of Medlin v. Buford.
While it is important to observe these ancient landmarks and to give force and validity to the doctrine of fraud as applied to executed contracts — to deeds — it should not be lightly done. Misrepresentations in the treaty as to location, boundaries, quality, value, etc., of which the other party had notice, or might have had knowledge by reasonable diligence, will not be heard by courts of law or equity to invalidate deeds. If this were so, it would seem that no man's title would be safe. Parties entering into solemn contracts, such as deeds, must use ordinary prudence — must examine matters open to them at the *Page 360 
time of executing their deeds, or they will not be heard to complain. Lytlev. Bird, 48 N.C. 222; Saunders v. Hatterman, 24 N.C. 32; 37 Am. Dec., 404.
In this case it appears from the deed of 28 February, 1887, that plaintiff sold and conveyed to defendant all the (483) timber on a certain tract of land containing ninety acres, above 13 inches at the stump, with the privilege of establishing tramroad across said land to be used in removing said timber. In the deed of 17 March, 1899, he conveys all the timber above 12 inches at the stump and conveys the fee simple in all the land covered by these roads. And extends the time to remove the timber to one year from 17 March, which would have been out at an earlier period.
If the plaintiff's statement of the contract of 17 March, 1899, be true, the changes contained in the deed as drawn by Freeman and signed by plaintiff are materially different; and as this deed was not read by plaintiff (as he says) because he could not read it without his spectacles, which he did not have, but was signed by him, relying on the statements of Freeman "that it was drawn just as the contract was," was a fraud in the treaty upon the plaintiff and should have been submitted to the jury.
If the plaintiff had required it to be read and Freeman had read it falsely it would have been a fraud in the factum. McArthur v. Johnson,Medlin v. Buford, supra.
There were objections to the plaintiff's evidence as to the terms of the contract, upon the ground that they tended to vary and contradict the deed. This would have been so if the deed had been established as the deed of the plaintiff. But when that was the very question at issue, and when it was necessary to do so to establish the alleged fraud, it was competent for that purpose. And after a careful examination, we find no substantial error, and the judgment is
Affirmed.