MOSHER *v.* SAWYER-WEBER TOOL MANUFACTURING CO.

1. FRAUD—CONTRACTS—MISREPRESENTATIONS—INTENT.

In an action for damages based on alleged fraud in inducing plaintiff to enter into a contract with defendant to market a certain tool manufactured by it which it represented to be patented while in fact it was not patented, where it appears that defendant's application in the United States patent office for a patent was allowed, but, not being broad enough to satisfy defendant, a new application was made, and later a broader and better patent was allowed and issued, *held*, to rebut any intent on defendant's part to defraud plaintiff, under the attendant cir-

cumstances, even if there was a technical misrepresentation.

2. SAME—DAMAGES NOT ALLOWABLE WHERE NONE SHOWN.
Where it does not appear that any one refused to buy the tool because it was not patented, or that plaintiff had any competition because of that fact, or that he suffered any damages whatever by reason of said claimed misrepresentation, no damages are allowable.

3. SAME—CANCELLATION OF INSTRUMENTS—FRAUD MUST BE CLEARLY ESTABLISHED.
If a contract is to be set aside on the ground of fraud, the fraud should be clearly established.

Error to Wayne; Smith (Guy E.), J., presiding. Submitted April 5, 1923.    (Docket No. 34.)    Decided October 1, 1923.

Case by Wendell P. Mosher against the Sawyer-Weber Tool Manufacturing Company for fraud. Judgment for defendant *non obstante veredicto*. Plaintiff brings error. Affirmed.

*Henry B. Graves* and *Mark L. Rowley*, for appellant.

*Max Hulett*, for appellee.

BIRD, J. Mr. Weber, of the defendant company, invented a tool known as "a crank pin re-turning tool" for the purpose of reclaiming and repairing crank shafts of automobiles.    The tool was used in connection with a lathe and was considered a tool of some merit to parties operating garages.    Defendant is engaged in manufacturing the tool.    Plaintiff was a man past middle life and had spent considerable of his time in selling life insurance.    The merits of the tool were brought to his attention and an interview followed with Mr. Sawyer of the defendant company and resulted in a temporary arrangement being made for plaintiff to market the tool; this temporary arrangement to be followed later, if satisfactory, by a

written contract.   Plaintiff met with success in selling the tool, and in February, 1920, made a written contract with defendant to market it for a period of two years, 1920 and 1921, with the privilege to either party to cancel the contract upon 30 days' notice.   The tool sold for $145 and plaintiff's commission was 30 per cent. of this amount.   Plaintiff went forward under his contract and later made the city of Detroit his headquarters.   In the fall of 1920, during the industrial depression, plaintiff's sales slowed down. He was owing the company about $3,400 for tools, and he was being urged to make payment.   Plaintiff's claim is that he discovered, in November, 1920, that the tool was not patented, although it was marked patented, and when he learned this he immediately rescinded his contract and brought this suit to recover his damages for having been fraudulently induced to enter into the contract.   After the case was tried the trial court overruled a motion of defendant for a directed verdict, but reserved the right to direct one later.   The matter was submitted to a jury and they found a verdict for the plaintiff.   Afterward upon motion the trial court set the verdict aside and directed a verdict for the defendant.   Plaintiff's position at the trial was that he was induced to enter into the contract because of the statement of the defendant that the tool was patented, and when he learned it was not patented he rescinded and brought assumpsit to recover what his services were worth, together with his expenses in endeavoring to sell the tool.   Defendant denies any misrepresentation or fraud and insists that the statement that the tool was patented was substantially true, but that if it were not true, plaintiff is not entitled to recover any damages in this action because none were shown.

The facts with reference to the patent were that on December 27, 1917, Alexander Weber filed an appli-

cation in the United States patent office for a patent on the tool.    The application was allowed May 21, 1919.    Mr. Weber was not satisfied with the allowance and within the six months allowed for payment of the fee and the taking out of the patent he filed a new petition for the purpose of obtaining a broader and better patent.    He succeeded in this, and on August 30, 1921, a few months after plaintiff rescinded his contract, the patent was allowed and afterward issued.    After the first application was allowed defendant marked the tool patented.    In view of what followed there may have been a short time that the tool was so marked when it ought not to have been. If we assume, however, that Mr. Weber could have had the first patent issued, if he had failed in his claims on the second application, there was not even a technical misrepresentation.    But conceding a technical misrepresentation the attendant circumstances were such that they rebutted any intent on defendant's part to defraud plaintiff by making the representation. But aside from this defense we think no recovery can be had because no damages were shown.    9 Cyc. p. 431.    It does not appear that the question was ever raised by anyone to plaintiff.    It does not appear that anyone refused to buy the tool because it was not patented.    It does not appear that he had any competition by reason of the fact of no patent.    In fact, plaintiff does not show that he suffered any damage by reason of the claimed misrepresentation.    He testified on this question:

"*Q.* Did you meet any competition of the tool on the market that was so similar that it was the same as the Weber tool?

"*A.* Not for use on a lathe, no.

"*Q.* So that you were not in any way hindered in making sales by reason of your claim of a lack of patent, were you?

"*A.* No."

Plaintiff's principal witness, Manes, testified without contradiction:

"*Q.* The fact that the tool was marked 'patented' as of a certain date did not in any way interfere with Mr. Mosher's ability to sell the tool, did it?

"*A.* Not at all.

"*Q.* The fact that it was marked 'patented,' in other words, would not in any way affect the success of sale?

"*A.* Not at all."

Had the plaintiff chose he could have learned from the patent office, where he got his information that no patent had been issued, that the application for a patent was pending and in process, and had he been seriously interested in the lack of a patent he could have gained some important information from defendant, and yet he admits that he did not talk with them about it.   If the contract in question is to be set aside upon the ground of fraud, the fraud should be clearly established.   6 Cyc. p. 336; *Hunter* v. *Hopkins*, 12 Mich. 227; *Cutler* v. *Lumber Co.*, 128 N. C. 477 (39 S. E. 30); 6 R. C. L. p. 925.   Plaintiff's evidence of misrepresentation and fraud as to the patent was insufficient to justify the jury in setting aside the contract on the ground of fraud.   But if it can be said that there was some evidence of fraud no damages were shown.

The judgment must be affirmed.   Defendant will recover its costs in this court.

WIEST, C. J., and FELLOWS, MCDONALD, CLARK, SHARPE, MOORE, and STEERE, JJ., concurred.