JOHN LLOYD MILLS AND WIFE, ROSELLA MILLS v. W. H. LYNCH.

(Filed 1 May 1963.)

**1. Trial § 21—**

On motion to nonsuit, plaintiff's evidence must be taken as true and defendant's evidence in conflict therewith must be disregarded.

**2. Cancellation and Rescission of Instruments §§ 2, 10—**

Evidence that defendant and the attorney acting for all the parties induced plaintiffs to sign a deed to the defendant by falsely representing that the instrument was a deed of trust, that plaintiffs were prevented from reading the paper or having it read to them by positive assertion that this was unnecessary because plaintiffs knew it was a deed of trust and that the attorney was in a hurry, *held* sufficient to overrule nonsuit in an action to set aside the deed for fraud.

**3. Same; Fraud § 5—**

Ordinarily a party is under duty to read an instrument before signing it and may not avoid the instrument on the ground of mistake as to its

contents, but this rule does not apply when the failure to read the instrument is due to fraud or oppression, and the party defrauded has acted with reasonable diligence in the matter.

### 4. Cancellation and Rescission of Instruments § 2;    Fraud § 1—

Inducing a person to execute the very instrument intended by the use of false and fraudulent representations constitutes fraud in the treaty; inducing a party to execute an instrument different from the one intended by the use of trick, artifice or fraud is fraud in the *factum*. However, the distinction is immaterial when the action is between the original parties to the instrument.

APPEAL by plaintiffs from *Walker, S.J.,* September 1962 Civil "A" Term of RANDOLPH.

Action to set aside a deed upon allegations of fraud. Plaintiffs' evidence tended to show the following facts:

Prior to June 19, 1961, John Lloyd Mills, the male plaintiff, owned an undivided one-sixth interest in a tract of land in Randolph County containing about eighteen acres. The land was subject to his mother's dower and had a tobacco allotment in her name. Plaintiff had an agreement with his brothers and sisters, who owned the other interests, to buy their shares in the land. Previously, defendant had sent word to John Lloyd Mills by his wife, the other plaintiff, that if he needed to borrow the money with which to buy the other interests he would let him have it. In consequence of this message, plaintiff advised defendant that he wanted to borrow the money from him. He asked plaintiff, "How can you make me safe?" Plaintiff replied, "Mr. Lynch, I can make you safe, a deed of trust on my place." Defendant then told plaintiff to have the attorney, who was representing plaintiff and his brothers and sisters in dividing the land and settling their father's estate, to prepare the papers. Defendant said, "Lloyd, you can pay me this money back as you raise tobacco on the place. You can pay me back at the end of the year."

When plaintiff went to the attorney's office to have the papers prepared he was informed they were already fixed and the attorney said, "All we want is the money." Thereafter the defendant discovered that the tobacco allotment on the place was not in plaintiff's name, and he said he wasn't interested in letting plaintiffs have $3,000.00 without the tobacco allotment. As a result, on June 19, 1961, plaintiff, defendant, and the attorney went to the home of plaintiff's mother. At first she refused to sell plaintiff her interest in the land because it was her only source of income. In the presence of the plaintiff and defendant the attorney said to her, "You sell your part to Lloyd, that is the only way he will let Lloyd have the money." Defendant told the mother

that she could have the house as long as she lived and then it would go to plaintiffs. As a result, the deed was then prepared at her house, and she conveyed her interest in the land to plaintiff, reserving the right to occupy the house during her lifetime. Plaintiff then went to his home, got his wife, and together they went to the attorney's office where defendant was waiting. The attorney said he had to be in Greensboro at 5:30 p.m. and was in a great hurry. In defendant's presence the attorney said to plaintiffs, "I will fix these papers without you being down here; you all ain't got a thing to do but sign a note (to) your brothers and sisters, $150.00 a piece, ($550.00) . . . Sign this deed of trust, you all know what it is; no need for you to read it, you all know what it is."

Plaintiff has only a fourth grade education and cannot read. In consequence of the representations made to him by the attorney and the defendant, he did not ask to have the paper which he signed read to him. Plaintiff testified, "I signed the note and my wife signed the note, and we both signed a deed of trust."

Plaintiffs and defendant left the office together. Outside on the street defendant said to the plaintiff, "You have got this thing straightened out, you ain't got a thing to do but go on and go to work and pay me my money."

Plaintiff had agreed to pay his brothers and sisters $500.00 each for their interests, a total of $2,500.00 and to pay his mother $750.00 for her dower, making a total of $3,250.00 for the place. The amount of the loan was $3,000.00 Plaintiff signed five notes to his brothers and sisters, each for $150.00. $500.00 went to the attorney for the fees which plaintiff and his brothers and sisters owed him for services rendered in connection with their father's estate.

About three weeks later plaintiff sold the timber off the place. When defendant stopped the cutting of the timber plaintiff learned for the first time that he and his wife had signed a deed to the defendant for the land instead of a deed of trust on it. Plaintiff had never discussed selling the property to the defendant and he never intended to sell him the land.

At the conclusion of this evidence defendant's motion for nonsuit was allowed.

*Coltrane and Gavin; Elreta Melton Alexander for plaintiff appellants.*

*Norman and Reid for defendant appellee.*

SHARP, J.   This appeal presents only the question of whether the plaintiffs' evidence was sufficient to survive the motion for nonsuit.

There are a number of discrepancies and omissions in plaintiffs' evidence. Defendant's evidence, of course, was not before the court. In his answer defendant categorically denies that he was guilty of any fraud. He alleges the transaction was handled by plaintiffs' own attorney who had been employed by the family to sell the land of their father in order to pay his debts, and the proceeds of the sale were used for that purpose; that the brothers and sisters had theretofore conveyed their interest in the land to the plaintiff in order to expedite the sale; that he had refused to make plaintiffs a loan and it was at all times understood by those concerned that defendant was buying the land outright.

Albeit the facts may be different, on motion to nonsuit, plaintiffs' evidence must be taken as true and considered in the light most favorable to them. 4 Strong's North Carolina Index, Trial, Section 21. Applying this well-established rule, plaintiffs' evidence, if believed, would establish that they were wilfully misled and misinformed by the defendant and the attorney acting for all parties; that the attorney of the defendant informed plaintiffs, an illiterate man and his wife, that the instrument they were signing was a deed of trust when it was actually a deed; that plaintiffs were prevented from reading the paper or having it read to them by the positive assertion that this was unnecessary because they knew what it was, a deed of trust.

"(T)he duty to read an instrument or to have it read before signing it, is a positive one, and the failure to do so, in the absence of any mistake, fraud or oppression, is a circumstance against which no relief may be had, either at law or in equity." *Furst v. Merritt*, 190 N.C. 397, 130 S.E. 40. However, we cannot say, as a matter of law, that plaintiffs' evidence in this case shows an absence of fraud or oppression. Neither can we hold as a matter of law, under the circumstances and considering the relation of the plaintiffs to the attorney acting for all the parties, that plaintiffs might not reasonably have relied upon the positive misrepresentations which they say were made.

Fraud affecting the validity of deeds is of two kinds, fraud in the treaty and fraud in the *factum*. *Medlin v. Buford*, 115 N.C. 260, 20 S.E. 463; *Cutler v. Roanoke R.R. & Lumber Co.*, 128 N.C. 477, 39 S.E. 30. Although it has been said "definitions are a bog for the unwary and a chart for the wicked," courts frequently find it necessary to attempt a demarcation. Where a party knowingly executes the very instrument he intended but is induced to do so by some false and fraudulent representation, we have an instance of fraud in the treaty. *McArthur v. Johnson*, 61 N.C. 317; *Medlin v. Buford*, supra; *Cutler v. Roanoke R.R. & Lumber Co.*, supra.

"As a general rule, it may be said that fraud in the *factum* arises from a want of identity or disparity between the instrument executed and the one intended to be executed, or from circumstances which go to the question as to whether the instrument, in fact, ever had any legal existence, as, for example, where a grantor intends to execute a certain deed, and another is surrepititiously substituted in the place of it . . . or where a blind or illiterate person executes a deed when it has been read falsely to him on his request to have it read . . . or where some trick, artifice or imposition, other than false representation as to the meaning and content of the instrument itself, is practiced on the maker in effecting the execution of the instrument." *Furst v. Merritt, supra.*

Plaintiffs contend that the evidence in the case makes out a case of fraud in the *factum*. However, the action is between the original parties to the deed. Therefore, the difference between fraud in the *factum* and fraud in the treaty is of no practical importance. In an action between original parties, if it appears that one induced the other to execute a paper by false and fraudulent misrepresentations as to its contents, the one who relied upon those misrepresentations to his injury — *if he acted with reasonable prudence in the matter* — is not obligated to the one who deceived him into executing the paper. *Furst v. Merritt, supra.* See also *Isley v. Brown,* 253 N.C. 791, 117 S.E. 2d 821.

It is for the jury to say what the facts are.

Reversed.