JAMES C. PARSONS, PLAINTIFF v. ADRIAN F. BAILEY, T.F.C. LEASING CORPORATION, TRADE LEASING CORPORATION, AND LIBERTY FINANCIAL CORPORATION, DEFENDANTS

No. 7618DC184

(Filed 18 August 1976)

Master and Servant § 34— agent acting outside scope of authority — directed verdict for employer proper

In plaintiff's action against defendant as agent for T.F.C. Leasing Corp., Trade Leasing Corp. and Liberty Financial Corp. for damages allegedly arising out of an unfair or deceptive business practice, the trial court properly directed a verdict for Trade Leasing where the evidence tended to show that defendant was an agent of Trade Leasing at the time he was negotiating with plaintiff, but the contract signed by plaintiff and defendant which defrauded plaintiff of his money and the check given by plaintiff to defendant made payable to T.F.C. put plaintiff on notice that defendant was acting outside his scope of authority as the agent for Trade Leasing, but was instead acting on his own behalf or on behalf of T.F.C.

APPEAL by plaintiff from *Kuykendall, Judge.* Judgment entered 3 November 1975 in District Court, GUILFORD County. Heard in the Court of Appeals 7 June 1976.

This is a civil action wherein the plaintiff, James C. Parsons, is seeking damages allegedly arising out of an unfair or

deceptive business practice by the defendant, Adrian F. Bailey, as agent for the defendants T.F.C. Leasing Corporation, Trade Leasing Corporation and Liberty Financial Corporation. Plaintiff's amended complaint is summarized and quoted as follows:

Adrian F. Bailey was president of Trade Leasing Corporation (Trade Leasing), an employee of T.F.C. Leasing Corporation (T.F.C.), and an employee of Liberty Financial Corporation (Liberty) when, in the spring of 1973, he met with plaintiff to discuss the possibility of plaintiff becoming a licensed dealer for Trade Leasing. Bailey represented to plaintiff that Trade Leasing was a subsidiary of Liberty when plaintiff exhibited an interest in the dealership; so Bailey gave him a "kit" of information on Trade Leasing and Liberty. Bailey corresponded with plaintiff on Trade Leasing stationery and plaintiff called Bailey several times at the Trade Leasing office in Atlanta. Plaintiff also checked out the references of Trade Leasing and Liberty at Bailey's suggestion. When it appeared to plaintiff that everything was in order, he met with Bailey on 4 May 1973 to execute a licensing agreement with Trade Leasing. However, instead of the agreement being with Trade Leasing Corporation as shown on sample agreements given to plaintiff earlier, the agreement which the plaintiff actually signed was with T.F.C. Leasing Corporation.

Subsequent to the signing of the agreement, plaintiff learned that T.F.C. and Trade Leasing were different companies. Plaintiff sought the return of his $2,500.00 investment given to Bailey at the time the agreement was signed but has been unsuccessful.

"XIV. By his course of prior dealings, Adrian F. Bailey made definite and specific representations that by signing the license agreement, plaintiff was to become a licensed dealer of Trade Leasing Corporation. This was a material misrepresentation."

"XVI. The representations to the plaintiff that he was to become a licensed dealer of Trade Leasing Corporation were made by Adrian F. Bailey with knowledge of its falsity and with a fraudulent intent. The plaintiff reasonably relied upon the misrepresentations referred to above to his deception and damage. The aforesaid actions of the defendant were fraudulent and constituted unfair and

deceptive acts and practices within the meaning of North Carolina General Statutes Sec. 75-1.1."

"XVIII. All of the defendants are jointly and severally liable to the plaintiff under the doctrine of respondent superior for the plaintiff's damages caused by Adrian F. Bailey who was the agent of all of the corporate defendants during the times complained of herein and was acting within the scope of his authority for all of the defendant corporations."

The defendants Trade Leasing and Liberty filed an answer wherein they admitted that Bailey was the president and employee of Trade Leasing but denied that he was an employee of Liberty. They also denied that at the time of the alleged fraudulent misrepresentation Bailey was acting as the agent of either corporation.

Neither Bailey nor T.F.C. filed an answer. On 28 October 1975 there was an entry of default against Bailey and T.F.C.

The case came on to be heard before the jury in district court. At the end of plaintiff's evidence, Trade Leasing and Liberty moved for a directed verdict. The court allowed the defendants' motions, directing a verdict for the defendants, Trade Leasing and Liberty. The issue of damages was submitted to the jury who returned a verdict against Bailey and T.F.C. in the amount of $2,854.00. Pursuant to G.S. 75-1.1 and G.S. 75-16, Judge Kuykendall awarded treble damages, $8,562.00 and an attorney's fee of $1,500.00. Plaintiff appealed.

*Clark, Tanner, Williams and Sharp by Eugene S. Tanner, Jr. for plaintiff appellant.*

*No counsel for defendant appellees, Trade Leasing and Liberty.*

*No counsel for defendants Bailey and T.F.C.*

HEDRICK, Judge.

Plaintiff assigns as error the granting of Trade Leasing's and Liberty's motions for a directed verdict. The pertinent evidence offered at trial by plainitff is summarized as follows:

Liberty owned 100% of the stock in L.F.C. Realty Corporation. L.F.C. Realty owned 70% of the stock in Trade Leas-

ing and Bailey owned the other 30%. James Johnson, as executive Vice-President of Trade Leasing entered into a contract with Bailey wherein Bailey became President and Sales Manager of Trade Leasing. Johnson was also executive Vice-President of Liberty and President of L.F.C. Realty.

Subsequent to the signing of the contract between Bailey and Trade Leasing, Bailey began marketing a franchise dealership in North Carolina which was purchased by Fred Bunge. In the spring of 1973, at approximately the same time Bailey was negotiating with Bunge, the plaintiff saw an advertisement in the newspaper for an opportunity to enter into a leasing franchise. In response to the ad, he called the defendant Bailey who was staying at a motel in Greensboro. Bailey was on the way out of town, but he agreed to leave a "packet" of information regarding the leasing franchise opportunity at the motel desk, which information the plaintiff picked up. This packet was introduced into evidence. Contained in the packet were financial references for Trade Leasing and Liberty, a sample contract of a franchising agreement with Trade Leasing listing Trade Leasing as a subsidiary of Liberty, a financial statement of Liberty, and other miscellaneous items. Throughout the packet there appears "TLC," "LFC," used in abbreviation of the corporations, and "The Trade Leasing Corporation, hereafter referred to as Trade" appears in the preamble to the sample contract.

Plaintiff contacted Bailey again and Bailey told him he was an agent for Trade Leasing. Bailey flew up from Atlanta and, together, he and plaintiff discussed the leasing franchise. Plaintiff was told the franchise was to secure contracts for Trade Leasing wherein Trade Leasing would lease equipment to the agreeing party. After talking with Bailey, plaintiff checked out the references listed in the "packet" and received a favorable response as to the financial situation of Trade Leasing and Liberty.

Subsequently, plaintiff entered into "a license agreement," the first paragraph of which reads in part:

"Agreement made this 4th day of May, 1973, between TFC Corporation (hereinafter referred to as Trade) . . . . "

The agreement was executed by Bailey. When plaintiff signed the agreement, he gave Bailey a cashier's check made payable

Parsons v. Bailey

to TFC Leasing Corporation. At the time plaintiff entered into the contract, he had read it over carefully including the first paragraph. He saw that it said TFC Corporation. He also directed the bank to draw the check to TFC Leasing Corporation. He "assumed," however, that "it was the original name or the true name of the parent company" and that "it was all part of the same organization," since Bailey had represented to plaintiff that he was signing a Trade Leasing contract.

Approximately a month after signing the agreement, he learned that Bunge already had the franchise dealership in North Carolina. Plaintiff called Bailey and was informed that TFC and Trade Leasing were different companies, but that "the backing [was] the same." Plaintiff asked for his money back but was unsuccessful. Eventually he was unable to even contact Bailey.

Sam Johnson testified that acting in his capacity as Executive Vice-President of L.F.C. Realty, he had fired Bailey.

Because plaintiff alleged and now contends that Liberty was the parent company of Trade Leasing and derived its liability from the close relationship of the two corporations and from the active involvement of Liberty in the affairs of Trade Leasing, it is clear that Liberty will be liable only if it is first determined that Trade Leasing is liable. Accordingly, we limit consideration of this assignment of error to the question of whether the trial court erred in granting a directed verdict for Trade Leasing. We hold that it did not.

> "The general rule is that a principal is responsible to third parties for injuries resulting from the fraud of his agent committed during the existence of the agency and within the scope of the agent's actual or apparent authority from the principal, even though the principal did not know or authorize the commission of the fraudulent acts (citations omitted)." *Norburn v. Mackie,* 262 N.C. 16, 23, 136 S.E. 2d 279, 284-285 (1964).

*Thrower v. Dairy Products,* 249 N.C. 109, 105 S.E. 2d 428 (1958).

It makes no difference that the agent was acting in his own behalf and not in the interests of the principal when the fraudu-

---

Parsons v. Bailey

---

lent act was prepetrated *unless* the third parties had notice of that fact. Restatement (Second) of Agency, § 262.

> "It would seem to be clear that if the agent is purporting to act as an agent and doing the things which such agents normally do, and the third person has no reason to know that the agent is acting on his own account, the principal should be liable because he has invited third persons to deal with the agent within the limits of what, to such third persons, would seem to be the agent's authority. To go beyond this, however, and to permit the third persons to recover in every case where the agent takes advantage of the standing and position of his principal to perpetuate a fraud would seem to be going too far." Restatement (Second) of Agency § 261, Reporter's Notes.

In the present case, there seems to be sufficient evidence to support a finding that Bailey was an agent of Trade Leasing at the time he was negotiating with plaintiff. Plaintiff's case against Trade Leasing must fail, however, because there is no evidence in this record to support a finding that he was acting within the scope of authority of such agency when he was negotiating with the plaintiff. Indeed, plaintiff's own evidence affirmatively discloses that Bailey was acting in his own behalf, or in behalf of T.F.C., or both, in his negotiations with plaintiff. The very contract signed by plaintiff and Bailey which defrauded plaintfif of his $2,500.00 and the very check given by plaintiff to Bailey made payable to T.F.C. show conclusively, as a matter of law, that plaintiff had notice that Bailey was not acting as the agent for Trade Leasing. The court properly directed a verdict for the defendants, Trade Leasing and Liberty.

In light of our holding in the assignment of error discussed above, it is not necessary that we discuss plaintiff's other assignments of error relating to the exclusion of evidence.

The judgment appealed from is affirmed.

Affirmed.

Judges PARKER and ARNOLD concur.