NORTHWESTERN BANK v. CLARENCE EDWARD ROSEMAN AND WIFE, ANGELA B. ROSEMAN, AND DENTEX, INC.

No. 8529SC467

(Filed 3 June 1986)

1. **Fraud § 12— misrepresentation by concealment—reasonableness of reliance —jury questions**

   The individual defendant's forecast of evidence was sufficient to establish an issue of fact as to whether his signature was obtained on a personal guaranty of a corporation's debt by fraud where it tended to show that defendant specifically told plaintiff bank's agent that there would be no factoring contract with the bank if he had to sign a personal guaranty; plaintiff's agent included the personal guaranty in a large package of factoring contract documents defendant thought he was signing as the corporation's president; plaintiff's agent had obtained the forged signature of defendant's wife on the guaranty; and plaintiff's agent arranged for a false notarization of the guaranty and other documents. Questions for the jury were presented as to whether the failure of plaintiff's agent to disclose to defendant that he was signing a personal guaranty amounted to a material misrepresentation by concealment and whether defendant's reliance on the misrepresentation without reading the document was reasonable.

2. **Fraud § 12— obtaining forged signature—liability of bank**

   The female defendant's forecast of evidence was sufficient to establish an issue of fact as to fraud by defendant bank's agent in obtaining a forged signature of the female defendant on a personal guaranty of a corporation's debt. Furthermore, the bank was liable for the acts of its agent within the range of the agent's employment even if not expressly authorized by the bank.

3. **Unfair Competition § 1— fraudulent concealment and obtaining forged signature**

   Defendants' forecast of evidence was sufficient to establish an unfair and deceptive trade practice by plaintiff bank in violation of N.C.G.S. § 75-1.1 where it tended to show that the bank's employee fraudulently obtained the female defendant's forged signature on a personal guaranty of a corporation's debt; the bank's employee concealed the personal guaranty in a large package of documents which the male defendant thought he was signing for the corporation after the male defendant had made it clear that he would not sign a personal guaranty; the bank engaged in the practice of having documents, including the personal guaranty, falsely notarized; and the employee was acting

as an agent of the bank in negotiating and obtaining the factoring agreement which included the personal guaranty.

Chief Judge HEDRICK dissenting.

APPEAL by defendants from *Owens, Judge* and from *Hyatt, Judge.* Partial summary judgment entered 6 February 1985 and final judgment entered 18 February 1985 in Superior Court, MC-DOWELL County. Heard in the Court of Appeals 31 October 1985.

*Van Winkle, Buck, Wall, Starnes and Davis, P.A., by Albert L. Sneed, Jr., for plaintiff appellee.*

*Goldsmith & Goldsmith, by C. Frank Goldsmith, Jr., for defendant appellants.*

BECTON, Judge.

This is an action for payment on a promissory note and a personal guaranty. The trial court entered partial summary judgment in favor of plaintiff, Northwestern Bank, on its claim against defendants, Clarence E. Roseman and Dentex, Inc. The same summary judgment order denied counterclaims asserted by Clarence and Angela Roseman for fraud, unfair and deceptive trade practices, and wrongful repossession and sale of personal property. The issues of fact remaining after entry of partial summary judgment were resolved by stipulation, and final judgment was entered. Defendants appeal. We reverse and remand the case for trial.

I

For purposes of this appeal the bank concedes the following relevant facts. In order to obtain financing for Dentex, Inc., Clarence Roseman, the president of Dentex, contacted Paul Richardson, the manager of the local branch of Northwestern Bank. Mr. Richardson referred Mr. Roseman to Northwestern Factors, Inc. (Factors). Mitchell Wiggs, an employee of Factors, contacted Mr. Roseman and negotiated a factoring arrangement: in exchange for immediate funds, Dentex would assign its accounts receivable to Factors for collection. Mr. Wiggs requested that Mr. Roseman execute a personal guaranty for the debts of Dentex. Mr. Roseman refused and said that if he had to sign a personal guaranty, there would be no factoring contract. Mr. Wiggs responded, "We'll have

to see what we can do about it." Mr. Wiggs never again spoke to Mr. Roseman about a personal guaranty.

On 5 August 1980, Mr. Wiggs brought documents to Dentex to close the factoring deal. He convinced Mr. Roseman's secretary, Ms. Miller, to sign Angela Roseman's name to a personal guaranty of the debts of Dentex to Factors, without Ms. Roseman's authorization, consent or knowledge. The secretary believed she was signing papers necessary to begin the factoring arrangement and did not know she had signed Ms. Roseman's name on a personal guaranty. Later that day, Mr. Wiggs and Mr. Roseman went to Mr. Richardson's office at the bank. A large package of documents was presented to Mr. Roseman. They were lined up on a table, and he signed them without reading them. One of the documents was the personal guaranty bearing the forged signature of Ms. Roseman. Subsequently, the guaranty was signed and sealed by the bank's notary public who represented on the document that the Rosemans' signatures had been properly executed before her on 5 August 1980. Mr. Richardson, the executive vice president and branch manager of the bank, testified in his deposition that it was "a practice of Northwestern Bank for the notary there to be asked to notarize signatures of people who do not, in fact, appear before her."

The factoring arrangement went into effect and continued for more than a year. In October 1981, the bank contacted Mr. Roseman regarding certain accounts receivable, and Mr. Roseman, on behalf of Dentex, executed a promissory note to Northwestern Bank for $145,000 to cover the accounts. A substitute promissory note was executed for the same amount on 28 December 1981.

Dentex defaulted on the note, and the corporation went out of business in 1983. The bank filed this action, alleging that Dentex had defaulted on the note and that the Rosemans had guaranteed the debt. During discovery, the bank dismissed its claim against Ms. Roseman. On 6 February 1985, the bank's motion for partial summary judgment was granted, and the court ordered that the defendants would recover nothing on their counterclaims. The only issues remaining for trial—the amount of principal due on the note and the extent to which interest had

been waived—were resolved by stipulation, and final judgment was entered.

Mr. Roseman argues that the trial court erred in granting summary judgment for the bank on its claim under the personal guaranty. Ms. Roseman asserts that the court improperly disposed of her counterclaim for fraud. And both argue that the court erred in entering summary judgment against them on their counterclaims for unfair and deceptive trade practices and wrongful repossession and sale of personal property. We agree that summary judgment was improper in this case.

## II

Summary judgment is inappropriate when the pleadings, depositions, affidavits, admissions and other testimony or evidence reveal any genuine issue of material fact. "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action. The issue is denominated 'genuine' if it may be maintained by substantial evidence." *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E. 2d 897, 901 (1972).

The bank's claim was based on the validity of the personal guaranty signed by Mr. Roseman. The bank asserts that Mr. Roseman had a duty to read the document and is bound by its terms absent proof of mistake, fraud, or oppression. *See Mills v. Lynch*, 259 N.C. 359, 130 S.E. 2d 541 (1963); *Harris v. Bingham*, 246 N.C. 77, 97 S.E. 2d 453 (1957). In order to defeat the bank's claim under the personal guaranty, Mr. Roseman asserted as a legal defense that his signature was obtained fraudulently. Therefore, Mr. Roseman was required to allege facts that, if believed, would prove each element of fraud.

> While fraud has no all-embracing definition and is better left undefined lest crafty [individuals] find a way of committing fraud which avoids the definition, the following essential elements of actionable fraud are well established: (1) False representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.

*Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E. 2d 494, 500 (1974) (citations omitted). There also must be reasonable reliance on the deceptive representation. *Johnson v. Owens*, 263 N.C. 754, 140 S.E. 2d 311 (1965).

As an initial matter, we dispose of Mr. Roseman's argument that proof of fraud as to any matter embraced within the personal guaranty—for example, that Ms. Roseman's signature was a forgery or that the notarization was false—vitiates the entire guaranty. *See Mills v. Dunk*, 263 N.C. 742, 140 S.E. 2d 358 (1965); *Cowart v. Honeycutt*, 257 N.C. 136, 125 S.E. 2d 382 (1962). In the context of the case at bar, the applicability of this principle is limited. Proof of fraud in obtaining Ms. Roseman's signature vitiates the document as to her, but not as to Mr. Roseman. Neither the forgery nor the false notarization affected the substantive provisions of the guaranty as it related to Mr. Roseman. Nonetheless, a finding that Mr. Wiggs obtained an unauthorized signature and arranged for a false notarization would be relevant to demonstrate a plan of deception and fraudulent intent as to Mr. Roseman.

[1] The bank argues that there is no evidence of a material misrepresentation or of reasonable reliance on the deception. In *First-Citizens Bank and Trust Co. v. Akelaitis*, 25 N.C. App. 522, 214 S.E. 2d 281 (1975), this Court recognized that, even though a creditor and a guarantor are not in a fiduciary relationship, the obligation of good and fair dealing imposes a duty on the creditor to disclose material facts that the guarantor is unlikely to discover. This duty arises when the creditor knows or has grounds to believe that the guarantor is being misled or "induced to enter into the contract in ignorance of facts materially increasing the risks," and the creditor has the opportunity to inform the guarantor. *Id.* at 526, 214 S.E. 2d at 284 (The Court quoted from Section 1249 in 10 Williston, *Contracts* (3d ed. 1967), which relates to contracts of suretyship, and applied that Section to contracts of guaranty.). In such a case, "non-disclosure would in effect amount to a contrary representation to the [guarantor]." *Id.* (quoting *Harris and Harris Construction Co. v. Crain and Denbo, Inc.*, 256 N.C. 110, 123 S.E. 2d 590 (1962) ). "Where there is a duty to speak, fraud can be practiced by silence as well as by a positive misrepresentation." *Id.* at 525, 214 S.E. 2d at 284 (citation omitted).

We conclude that the evidence in this case would support a jury's finding that the failure to disclose that a personal guaranty was required and that one was included in the contract package, after Mr. Roseman specifically and unequivocally stated there would be no contract if he had to sign a personal guaranty, amounted to a representation that none was necessary. If Mr. Roseman's evidence was believed, Mr. Wiggs engaged in a course of conduct designed to induce Mr. Roseman to sign the guaranty: Mr. Wiggs obtained the forged signature of Ms. Roseman; he proceeded to close the deal with Mr. Roseman with the knowledge that Mr. Roseman would not knowingly sign a personal guaranty; Mr. Wiggs included the personal guaranty in a large package of documents that Mr. Roseman obviously thought he was signing *as president of Dentex*; and Mr. Wiggs arranged for a false notarization of the guaranty. Although the parties were not in a fiduciary relationship, *see, e.g., Vail v. Vail,* 233 N.C. 109, 63 S.E. 2d 202 (1951), good and fair dealing required that Mr. Wiggs disclose to Mr. Roseman that he was signing a personal guaranty. Failure to disclose this fact amounted to a material misrepresentation by concealment.

We distinguish the case of a guarantor who, after knowingly and intentionally signing a guaranty, pleads mere ignorance of the contents or legal effect of a guaranty. *See International Harvester Credit Corp. v. Bowman,* 69 N.C. App. 217, 316 S.E. 2d 619, *disc. rev. denied,* 312 N.C. 493, 322 S.E. 2d 556 (1984).

The bank contends that Mr. Roseman's reliance on any silent misrepresentation was unreasonable as a matter of law. The law imposes a duty on individuals to exercise ordinary prudence in relying upon business associates. *Johnson v. Lockman,* 41 N.C. App. 54, 58, 254 S.E. 2d 187, 189, *disc. rev. denied,* 297 N.C. 610, 257 S.E. 2d 436 (1979).

> But the law does not require a prudent [person] to deal with everyone as a rascal and demand covenants to guard against the falsehood of every representation which may be made as to facts which constitute material inducements to a contract. There must be a reasonable reliance upon the integrity of [people] or the transactions of business, trade and commerce could not be conducted with that facility and con-

fidence which are essential to successful enterprise and . . . prosperity.

*Walsh v. Hall,* 66 N.C. 233, 238 (1872); *Johnson v. Owens,* 263 N.C. at 757-58, 140 S.E. 2d at 314 (1965); *Cowart,* 257 N.C. at 143, 125 S.E. 2d at 387; *Roberson v. Williams,* 240 N.C. 696, 83 S.E. 2d 811 (1954). Courts must cautiously balance the conflicting policies of suppressing fraud on one hand and discouraging neglect and inattention toward one's obligations on the other. *Johnson v. Owens.* "Just where reliance ceases to be reasonable and becomes such negligence and inattention that it will, as a matter of law, bar recovery for fraud is frequently very difficult to determine." *Johnson v. Owens,* 263 N.C. at 758, 140 S.E. 2d at 314.

In close cases, courts should be loath to deny relief on the theory that had the victim been more attentive, the fraud would not have worked. *Id.; Roberson.* Whether reliance on a misrepresentation was reasonable generally is a question of fact for a jury. *Johnson v. Lockman,* 41 N.C. App. at 58, 254 S.E. 2d at 189 (citing numerous cases). It is only in exceptional cases that the issue of reasonable reliance may be decided by the summary judgment procedure. *Id.* at 61, 254 S.E. 2d at 191. The case at bar does not present an exceptional or extraordinary situation. In light of Mr. Roseman's specific allegations of intentional deception, we cannot attribute the failure to read the guaranty solely to the negligence of Mr. Roseman as a matter of law. *Cf. Griggs v. Griggs,* 213 N.C. 624, 626-27, 197 S.E. 165, 167 (1938) (Because the plaintiff did not allege trick or device and fraudulent intent, his failure to read what he signed must be attributed to his own negligence.). There is evidence that Mr. Wiggs willfully misled Mr. Roseman as to the contents of the package of factoring contract documents. *Cf. Williams v. Williams,* 220 N.C. 806, 809-10, 18 S.E. 2d 364, 366 (1942) ("There is no evidence whatever of any attempt on the part of anyone to keep the contents or significance of the paper from the plaintiff or to deceive her with respect thereto.").

Reasonable minds may differ as to whether Mr. Wiggs' conduct constituted an intentional misrepresentation or concealment of a material fact and, if so, whether Mr. Roseman's reliance was reasonable. Mr. Roseman will not be charged with knowledge of the contents of the guaranty he signed if it were obtained by trick or artifice. *Cowart; see Griggs.* Whether a reasonably pru-

dent man, under similar circumstances, would have signed without reading the document is a question for the jury. The trial court erred in granting summary judgment against Mr. Roseman on the personal guaranty.

### III

[2]  Angela Roseman argues that the trial court erred in entering summary judgment against her counterclaim for fraud. It is not disputed that Ms. Miller was acting as Mr. and Ms. Roseman's secretary and agent in processing the factoring documents that Mr. Wiggs brought to Dentex. The evidence was sufficient to show that Mr. Wiggs falsely represented to Ms. Miller the nature of the documents she was signing and, through deception and artifice, convinced her to forge the name "Angela Roseman" on a personal guaranty. There is sufficient evidence to support a finding by a jury that Mr. Wiggs' statements were reasonably calculated to deceive; made with intent to deceive; in fact deceived Ms. Miller; induced reliance; and resulted in the forging of Ms. Roseman's name. And at the least, Ms. Roseman was injured to the extent she incurred costs in defending against the bank's action on the guaranty before she was dismissed as a party. "[W]here a fraud is worked upon an agent by a third person, either by misrepresentation or by silence, the fraud is considered as worked upon the principal, and the latter has a right of action against the third person for redress." 3 Am. Jur. 2d *Agency* Sec. 289, at 650 (1962) (footnote omitted).

The bank argues that it is not liable for the intentional tort of Mr. Wiggs because the act was beyond the scope of his employment. The bank asserts that Mr. Wiggs was not hired to fraudulently obtain unenforceable documents and that, if he did so, he acted outside his employment. But the bank is liable for the acts of its agent acting within the range of the agent's employment, even if not expressly authorized by the bank. *See Snow v. De Butts*, 212 N.C. 120, 193 S.E. 224 (1937). In the case at bar, the bank admitted that Mr. Wiggs was its agent and was authorized to negotiate and secure the factoring agreement with Dentex.

> The general rule is that a principal is responsible to third parties for injuries resulting from the fraud of his [or her] agent committed during the existence of the agency and within the scope of the agent's actual or apparent authority

from the principal, even though the principal did not know or authorize the commission of the fraudulent acts.

*Norburn v. Mackie,* 262 N.C. 16, 23, 136 S.E. 2d 279, 284-85 (1964) (citations omitted); *see Lee v. Keck,* 68 N.C. App. 320, 315 S.E. 2d 323, *disc. rev. denied,* 311 N.C. 401, 319 S.E. 2d 271 (1984). If Mr. Wiggs fraudulently obtained Ms. Roseman's signature, he did so while procuring the factoring agreement for the bank.

The bank contends that, because the forged document could not be enforced, it could not have been obtained to further the interests of the principal. Therefore, the bank concludes, Mr. Wiggs' motives must have been personal. The impotence of this argument becomes apparent when one considers what personal motive Mr. Wiggs might have had to obtain a forgery for his employer. In any event, the motive of the agent is not a determining factor. *Snow.* There is ample evidence from which a jury could find that Mr. Wiggs was acting in the scope of his employment in obtaining the forgery, and that he was "attempting to do what he was employed to do." *Snow,* 212 N.C. at 123, 193 S.E. at 226. After all, Mr. Wiggs was advancing the bank's interest in starting the factoring process and earning fees. Perhaps there would be no default, and the guaranty would remain unused and therefore unchallenged. Whether Mr. Wiggs had the requisite fraudulent intent and whether the bank's branch manager actually participated in the fraud by having the factoring documents falsely notarized are issues of fact for the jury. Summary judgment was inappropriate as to Ms. Roseman's counterclaim for fraud.

IV

[3] The Rosemans next argue that the trial court erred in entering summary judgment against them on their counterclaim for unfair and deceptive trade practices under N.C. Gen. Stat. Sec. 75-1.1 (1985). There is no question that the allegedly unfair activity in this case comes within the meaning of "practices in or affecting commerce" under the statute. *See Johnson v. Phoenix Mutual Life Insurance Co.,* 300 N.C. 247, 266 S.E. 2d 610 (1980). And for the purpose of testing the entry of summary judgment, the bank accepts as true the allegations that Mr. Wiggs fraudulently obtained Ms. Roseman's forged signature; that Mr. Wiggs concealed the personal guaranty in a large package of documents which Mr. Roseman thought he was signing for the corporation, after Mr.

Roseman made clear that he would not sign a personal guaranty; that the bank engaged in the practice of having documents, including the personal guaranty involved herein, falsely notarized; and that Mr. Wiggs was acting as an agent of the bank in negotiating and obtaining the factoring agreement.

The standards for evaluating whether a trade practice is unfair or deceptive are summarized in *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E. 2d 397, 403 (1981) (citations omitted):

> Whether a trade practice is unfair or deceptive usually depends upon the facts of each case and the impact the practice has in the marketplace. . . . A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers. . . . [A] practice is deceptive if it has the capacity or tendency to deceive; proof of actual deception is not required. . . . [S]tate courts have generally ruled that the consumer need only show that an act or practice possessed the tendency or capacity to mislead, or created the likelihood of deception, in order to prevail under the states' unfair and deceptive practices act. . . .

Under the statute, it is irrelevant whether the consumer was in fact deceived or whether the act or practice was conducted in good faith. *Id.*

The bank argues that there could be no deception or unfairness in the case at bar because Mr. Roseman was free to read the documents he signed. But as discussed in Part II, *supra*, whether Mr. Roseman's failure to read the guaranty was reasonable under the circumstances is a question of material fact for the jury. Although proof of fraud is not the only way to establish an unfair and deceptive act, a finding by the jury that Mr. Roseman was in fact a victim of fraud, "would necessarily constitute a violation of the prohibition against unfair and deceptive acts." *Hardy v. Toler*, 288 N.C. 303, 309, 218 S.E. 2d 342, 346 (1975).

The bank relies on the decision in *Parsons v. Bailey*, 30 N.C. App. 497, 227 S.E. 2d 166, *disc. rev. denied*, 291 N.C. 176, 229 S.E. 2d 689 (1976) for the proposition that an employer corporation is not liable for the acts of its employee-agent when the employee was acting on his or her own behalf or on behalf of another cor-

poration. But in *Parsons* there was no evidence that the employee was "acting within the scope of authority" of his agency when he was negotiating with the plaintiff. *Id.* at 502, 227 S.E. 2d at 169. In contrast, the bank in the case at bar admitted that Mr. Wiggs was acting within the scope of authority of his agency when he negotiated with the Rosemans.

In the procedural posture of this case, we must determine whether the facts, if accepted by a jury as the Rosemans present them, would establish a violation of G.S. Sec. 75-1.1 as a matter of law. *Love v. Pressley,* 34 N.C. App. 503, 516, 239 S.E. 2d 574, 583 (1977), *disc. rev. denied,* 294 N.C. 441, 241 S.E. 2d 843 (1978). We hold that they would. Summary judgment is reversed on the counterclaim for unfair and deceptive trade practices, and the issue is remanded for trial.

### V

The Rosemans' final argument is that the trial court erred in entering summary judgment against their counterclaim alleging the bank's wrongful refusal to allow them to redeem their property after repossession. Apparently, the Rosemans defaulted on a promissory note, separate from Dentex's note to the bank, which was secured by an airplane owned by the Rosemans. They contend that, although the repossession was proper, the bank wrongfully refused to allow them to redeem the airplane by repaying the balance of their obligation. The bank sold the airplane at a public auction and applied the surplus to the Rosemans' "personal guaranty indebtedness" resulting from the default of Dentex on its note to the bank. The bank relies on a security agreement with the Rosemans which provides that the airplane is collateral for all obligations of the Rosemans to the bank.

Both parties agree that if and only if the personal guaranty discussed above was valid, the application of the surplus from the public sale would have been proper because the Rosemans did not tender payment of all obligations secured by the collateral. *See* N.C. Gen. Stat. Sec. 25-9-506 (1985 Cum. Supp.). The outcome of this issue depends upon the jury's finding on remand as to whether Mr. Roseman's signature is valid and binding. *See* Part II, *supra.* Therefore, summary judgment on this claim is reversed. The trial court will consider this issue at the appropriate time on remand.

For the reasons set forth above, we

Reverse and remand.

Chief Judge HEDRICK dissents.

Judge WEBB concurs.

Chief Judge HEDRICK dissenting.

In my opinion the trial court did not err in entering summary judgment for plaintiff against defendant Clarence Edward Roseman. " 'In this State, it is held that one who signs a paper writing is under a duty to ascertain its contents, and in the absence of a showing that he was wilfully misled or misinformed by the defendant as to these contents, or that they were kept from him in fraudulent opposition to his request, he is held to have signed with full knowledge and assent as to what is therein contained.' " *Gas House, Inc. v. Southern Bell Telephone Co.*, 289 N.C. 175, 180, 221 S.E. 2d 499, 503 (1976) (quoting *Williams v. Williams*, 220 N.C. 806, 18 S.E. 2d 364 (1942)). Defendant's testimony that he told plaintiff that he would not sign a guaranty does not amount to his having been misled or misinformed as to the contents of the thing he signed, or that the contents of the instrument were fraudulently kept from him.

I also believe the trial court was correct in entering summary judgment for plaintiff on defendant Angela Roseman's counterclaim for fraud. *See Perkins v. Insurance Co.*, 4 N.C. App. 466, 167 S.E. 2d 93 (1969).