MASSEY v. DUKE UNIVERSITY

[129 N.C. App. 807 (1998)]

For the foregoing reasons, the judgment of the trial court is

Affirmed.

Judges GREENE and LEWIS concur.

───────────

WILLIE R. MASSEY, JR., GERALDINE DORTY, PERSONAL REPRESENTATIVE OF THE ESTATE OF FELICIA MASSEY, AND DARON MASSEY, PLAINTIFFS v. DUKE UNIVERSITY AND PRIVATE DIAGNOSTIC CLINIC, L.L.P., DEFENDANTS

No. COA97-1058

(Filed 16 May 1998)

1. **Coroners and Medical Examiners § 34 (NCI4th)— removal of eyes—autopsy form signed—summary judgment**

   The trial court erred by granting defendants' summary judgment motion in an action for emotional distress and mental suffering by the children and next of kin of the deceased where, following his death, a first-year intern informed plaintiffs that the deceased's eyes were suitable for donation; plaintiffs refused and the intern recorded in the medical record that they had done so; the intern next asked about an autopsy, to which plaintiffs agreed provided that it did not require removal of body parts; plaintiffs then signed a blank autopsy form which authorized removal of organs; the intern did not record the family's limitations on the form; and the pathologist employed by defendants followed standard procedure and removed the deceased's eyes. Plaintiffs' forecast is sufficient to raise genuine issues of material fact; the special circumstances exception to the duty to read what one signs may apply in that the emotional state of plaintiffs two and a half hours after their father's unexpected death excuses the failure to read the autopsy release form and there is a genuine issue of fact as to whether the intern misrepresented the extent and intrusive nature of standard autopsies performed at Duke.

2. **Appeal and Error § 421 (NCI4th)— negligence action— appeal from summary judgment—negligence issue remanded—no argument as to punitive damages claim— affirmed**

   Pursuant to Rule 28(b)(5) of the North Carolina Rules of Appellate Procedure, plaintiffs' appeal from a summary judgment

against them as to their punitive damages claim was deemed abandoned because they did not argue it in their brief and the summary judgment as to the punitive damages claim was affirmed even though the summary judgment on the negligence claim was reversed.

Appeal by plaintiffs from order entered 18 April 1997 by Judge Henry V. Barnette, Jr. in Durham County Superior Court. Heard in the Court of Appeals 21 April 1998.

Willie R. Massey, Sr. died at Duke University Medical Center on 22 January 1995 from cardiomyopathy at the age of forty-seven years old. Plaintiffs are Mr. Massey, Sr.'s children and next of kin Willie R. Massey, Jr., Felicia Massey, and Daron Massey.

Plaintiffs' evidence tends to show the following: Mr. Massey, Sr. was treated at Duke Medical Center during the final stages of his illness. Dr. Amy Abernethy, M.D., a first-year intern employed by Duke, treated Mr. Massey, Sr. Upon notification of Mr. Massey, Sr.'s death, Willie Massey, Jr. and Felicia Massey, along with Mayola Thornton, a family friend, went to Duke Medical Center. Dr. Abernethy met with the Masseys and arranged for them to view Mr. Massey, Sr.'s body.

Plaintiffs testified that Dr. Abernethy, pursuant to Duke University Medical Center policy, asked them if they would donate Mr. Massey, Sr.'s organs. Specifically, Dr. Abernethy informed the plaintiffs that Mr. Massey, Sr.'s eyes were suitable for donation. Felicia Massey began to cry and Willie Massey, Jr. told Dr. Abernethy that they did not want their father's eyes removed and did not wish to donate them. Felicia then said she did not want to bury her father with any of his body parts missing. Dr. Abernethy recorded in the Duke medical record that she had asked the family about organ donation and that the family had refused.

Plaintiffs testified that Dr. Abernethy then asked the family if they wanted an autopsy performed on Mr. Massey, Sr.'s body. Dr. Abernethy informed them that it would be helpful in determining the cause of death. Ms. Thornton testified that Willie Massey, Jr. asked if an autopsy would require the removal of any organs from his father's body. Ms. Thornton testified that both Willie Massey, Jr. and Felicia Massey reiterated that they did not want to bury their father with any parts of his body missing. Ms. Thornton further testified that Dr. Abernethy assured the Masseys that the autopsy did not require the

removal of body parts. Willie Massey, Jr. then signed a blank autopsy form as requested by Dr. Abernethy. Mr. Massey, Jr. also printed his address on the form. The printed portion of the autopsy form stated: "In hope that the above-authorized examination may benefit others, . . . I authorize the examining physician to remove such specimens, tissues and/or organs, and to retain, preserve and/or contribute the same for such diagnostic, therapeutic, or other scientific purposes as may be deemed proper." Immediately following this sentence was a section to note any limitations that might have been placed by the family on the autopsy. Dr. Abernethy did not record the Masseys' objections in the blank place notwithstanding the Masseys' oral refusal to consent to the donation of any of their father's organs. Dr. Abernethy testified that the autopsy was discussed first before their organ donation discussion.

Dr. Eri Oshima, M.D., a pathologist employed by Duke, performed the autopsy. Following Duke Medical Center's standard procedure, Dr. Oshima removed Mr. Massey, Sr.'s eyes. In Dr. Oshima's deposition, she noted that there was no medical reason to remove the eyes in order to determine the cause of Mr. Massey, Sr.'s death. Dr. Oshima also noted that she relies on the treating physician to notify her of any limitations on the scope of the autopsy after the physician has conferred with the family.

Following the autopsy, the body was taken to Hanes Funeral Service in Durham where it was examined by the funeral director. The director determined that the eyes had been removed and informed the family.

The plaintiffs instituted this action seeking compensatory and punitive damages for emotional distress and mental suffering. On 7 April 1997, defendants filed a motion for summary judgment. The trial court granted defendants' summary judgment motion and plaintiffs appeal.

*Haywood, Denny & Miller, L.L.P., by Michael W. Patrick, for plaintiff-appellants.*

*Moore & Van Allen, PLLC, by Lewis A. Cheek and Joseph H. Nanney, Jr., for defendant-appellees.*

EAGLES, Chief Judge.

[1] The sole issue on appeal is whether the trial court erred in granting defendants' summary judgment motion. Summary judgment is to

be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." G.S. 1A-1, Rule 56(c). While the moving party has the burden of proving there is no genuine issue of material fact

> [t]he movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which could bar the claim. (Citations omitted.) By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial.

*Varner v. Bryan*, 113 N.C. App. 697, 701, 440 S.E.2d 295, 298 (1994) (quoting *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)).

Plaintiffs' complaint seeks relief for infliction of emotional distress due to mutilation of a dead body because the autopsy performed on their father went beyond the scope authorized by the family. Plaintiffs also seek punitive damages.

> Our law recognizes that the next of kin has a quasi-property right in the body—not property in the commercial sense but a right of possession for the purpose of burial—and that there arises out of this relationship to the body an emotional interest which should be protected and which others have a duty not to injure intentionally or negligently . . . . Furthermore, the survivor has the legal right to bury the body as it was when life became extinct. *Kyles v. R. R.*, *supra*. For any mutilation of a dead body the one entitled to its custody may recover compensatory damages for his mental suffering caused thereby if the mutilation was either intentionally or negligently committed, *Morrow v. R. R.*, 213 N.C. 127, 195 S.E. 383, or was done by an unlawful autopsy. If defendant's conduct was wilful or wanton, actually malicious, or grossly negligent, punitive damages may also be recovered. *Kyles v. R. R.*, *supra*.

*Parker v. Quinn-McGowen Co.*, 262 N.C. 560, 561-62, 138 S.E.2d 214, 215-16 (1964).

Defendants argue that plaintiffs authorized an unlimited autopsy of their father by signing a blank autopsy form and therefore have no cause of action. We disagree.

"[T]he duty to read an instrument or to have it read before signing it, is a positive one, and the failure to do so, in the absence of any mistake, fraud or oppression, is a circumstance against which no relief may be had, either at law or in equity." *Mills v. Lynch*, 259 N.C. 359, 362, 130 S.E.2d 541, 543-44 (1963) (quoting *Furst v. Merritt*, 190 N.C. 397, 130 S.E. 40 (1925)).

> To obtain relief from a contract on the ground of fraud, the complaining party must show: a false factual representation known to be false or made in culpable ignorance of its truth with a fraudulent intent, which representation is both material and reasonably relied upon by the party to whom it is made, who suffers injury as a result of such reliance.

*Davis v. Davis*, 256 N.C. 468, 471, 124 S.E.2d 130, 133 (1962).

> One who signs a written contract without reading it, when he can do so understandingly is bound thereby unless the failure to read is justified by some special circumstance. (Citations omitted.) To escape the consequences of a failure to read because of special circumstances, complainant must have acted with reasonable prudence.

*Id.* at 472, 124 S.E.2d at 133.

Here the plaintiffs' forecast of evidence is sufficient to raise a genuine issue of material fact as to the misrepresentation issue and the reasonable reliance issue such that the special circumstances exception may apply. Mr. Massey, Sr. died at 10:40 a.m. Two hours and twenty minutes later Dr. Abernethy asked the Massey family whether they would consider donating any of their father's organs and whether they wanted an autopsy performed. The Masseys were very emotional after being told of their father's unexpected death and were relying on Dr. Abernethy's expertise as a doctor. The Masseys clearly told Dr. Abernethy that they did not want their father's eyes donated and they were not interested in any organ donation. The emotional state the Masseys were in two and a half hours after their father's unexpected death constitutes special circumstances and excuses Mr. Massey, Jr.'s failure to read the autopsy release form. Mr. Massey, Jr. made it clear to Dr. Abernethy that organ donation was out of the question. In light of his father's unexpected death earlier

that day, Mr. Massey, Jr. justifiable relied on Dr. Abernethy to ensure that the family's orally-expressed wishes were followed.

Moreover, there is a genuine issue of material fact as to whether the defendant Dr. Abernethy misrepresented to the plaintiffs the extent and intrusive nature of "standard" autopsies performed at Duke Medical Center. The parties' evidence differs as to what was said when the autopsy was discussed.

The parties do not dispute that plaintiffs told Dr. Abernethy that they did not want their father's eyes donated. Dr. Abernethy and the Masseys also discussed whether the family wanted an autopsy performed on Mr. Massey, Sr. Plaintiffs contend that after Dr. Abernethy asked whether plaintiffs wanted an autopsy performed, Willie Massey, Jr. asked the doctor if the autopsy would require the removal of any organs from his father's body. Willie Massey, Jr. reiterated that they did not want to bury their father "with any body parts missing." Plaintiffs' evidence is that Dr. Abernethy assured the Massey family that the autopsy would not require the removal of organs. On the other hand, defendants contend that the family placed no limitations on the autopsy, that the normal autopsy procedure followed by Duke University includes removal of the eyes, and that the autopsy did not exceed the scope authorized by the plaintiffs. Given this factual dispute over what happened during the autopsy discussion, summary judgment was inappropriate.

In addition, whether reliance on a party's alleged misrepresentation was reasonable generally is a question of fact for the jury. *Northwestern Bank v. Roseman*, 81 N.C. App. 228, 234, 344 S.E.2d 120, 124 (1986). It is only in exceptional cases that the issue of reasonable reliance on an alleged misrepresentation may be decided by summary judgment. *Id.*, 344 S.E.2d at 125. Accordingly, the trial court erred in granting defendants' summary judgment motion.

[2] However, because the plaintiffs did not argue in their brief that summary judgment as to the punitive damages claim was inappropriate, pursuant to N.C.R. App. P. 28(b)(5), their appeal from summary judgment as to the punitive damages claim is deemed abandoned. Accordingly, the trial court's summary judgment motion as to the plaintiffs' punitive damages claim is affirmed.

Affirmed in part and reversed in part.

Judges JOHN and TIMMONS-GOODSON concur.