CENTURA BANK v. EXECUTIVE LEATHER, INC.

[132 N.C. App. 759 (1999)]

CENTURA BANK, PLAINTIFF v. EXECUTIVE LEATHER, INC. AND JAMES E. KILLIAN, DEFENDANTS

No. COA98-794

(Filed 6 April 1999)

**Fraud— failure to read guaranty agreement**

The trial court did not err by granting summary judgment for plaintiff on its suit against Killian as guarantor of sums owed by Executive Leather. Killian did not dispute that he signed the guaranty, but instead contended that his signature was obtained fraudulently in that he assumed that the documents were similar in nature and carried the same consequences as previous documents signed in past dealings and did not read the guaranty before signing it.

Appeal by defendants from judgment entered 12 March 1998 by Judge James R. Vosburgh in Nash County Superior Court. Heard in the Court of Appeals 24 February 1999.

*Poyner & Spruill, L.L.P., by J. Nicholas Ellis, for plaintiff-appellee.*

*Whitesides & Walker, L.L.P., by H.M. Whitesides, Jr., for defendants-appellants.*

TIMMONS-GOODSON, Judge.

Executive Leather, Inc. ("Executive") and James E. Killian ("Killian") (collectively, "defendants") appeal from an order granting summary judgment to Centura Bank ("Centura") on its claims for monies owed under two notes and a guaranty agreement. For the reasons hereinafter stated, we affirm the order of summary judgment.

The evidence presented at the hearing on Centura's motion for summary judgment tended to show that Killian founded Executive, a leather furniture and upholstery manufacturer, in 1981. Killian served as the president and sole voting shareholder of Executive from its inception until it ceased operations in 1996. Prior to establishing Executive, Killian had worked as an accountant, and although he had passed all parts of the Certified Public Accountant examination, he never completed the experience requirements to become certified.

In 1984 and 1985, Executive entered into Factoring and Security Agreements ("the 1984-85 Agreements") with Phillips Factors Corporation ("Phillips") wherein Phillips agreed to purchase certain accounts receivable from Executive at a discount. Under the terms of the 1984-85 Agreements, Executive was not responsible to Phillips for non-payment on any of the factored accounts receivable. After several years of operations pursuant to the 1984-85 Agreements, Executive requested that Phillips check credit ratings and approve orders for customers whose accounts Phillips was unwilling to guarantee. When Phillips refused to guarantee the accounts, Executive terminated the 1984-85 Agreements with Phillips and established a relationship with another factoring company.

In 1994, Killian contacted Phillips about entering into a new factoring agreement with Executive. Killian wanted the new agreement to include the same terms as those set out in the 1984-85 Agreements. However, Phillips was unwilling to finance Executive's accounts receivable; therefore, it encouraged Executive to obtain a loan from Centura to finance its operations. On 14 November 1994, Centura provided Killian and Executive with a commitment letter explaining the terms of the financing arrangement offered by Centura. The commitment letter described the financing as a "$600,000.00 one-year revolving line of credit" coupled with a "$95,000.00 two-year loan" with a "five-year amortization," with the purpose of providing an "[o]perating line of credit to fund timing differences of accounts receivable conversion to cash" and a "[p]ermanent working capital loan." The commitment letter also stated that the financing offered by Centura was to be unconditionally guaranteed by Killian and required Killian to provide Centura with personal financial statements. Killian furnished Centura with such a statement dated as of September 15, 1994.

On 15 November 1994, Executive and Phillips entered into a Factoring and Security Agreement ("the 1994 Agreement"). Under the terms of the 1994 Agreement, Phillips was not required to pay for the accounts receivable until payments were actually received on the accounts or until after ninety (90) days had expired. In order for Executive to receive funds sooner, it would draw on the funds borrowed from Centura and send its accounts receivable to Phillips. Phillips would then collect on the accounts receivable and pay the collected amounts minus its commission to Centura. Thereafter, Centura would credit Executive's loan balances with the payments made by Phillips. Killian did not ask any specific questions regarding

the transaction at the time he executed the agreement on behalf of Executive.

On 16 November 1994, Killian acknowledged and accepted the commitment letter on behalf of Executive, as Borrower, and by Killian himself, as Guarantor. Again, Killian failed to ask any questions about the terms and conditions of the 1994 Agreement when he acknowledged and accepted the commitment letter. On the same day, Executive executed and delivered to Centura two commercial notes in the amounts of $600,000.00 and $95,000.00 for the loans described in the commitment letter. Killian also executed and delivered to Centura an Unconditional Guaranty in the amount of $695,000.00. At the time he executed these documents, Killian did not ask any questions or express any uncertainty about the meaning and effect of the guaranty.

On 28 December 1995, Centura and Executive entered into a Modification Agreement whereby the $600,000.00 line of credit was reduced to $500,000.00 and the maturity date for repayment of the principal amount was modified from 28 December 1995 to 2 May 1996. On 2 May 1996, Centura and Executive entered into another modification Agreement whereby the existing $500,000.00 line of credit was further reduced to $460,000.00, the maturity date for the repayment of the principal amount was extended to 2 October 1996, and the interest rate was increased from prime plus 1.5% to prime plus 2%. Killian also entered into a Guarantor's Consent on 2 May 1996 signifying his consent to the loan modifications and reaffirming his obligations under the terms and conditions of the guaranty.

Executive defaulted on its obligations under the commercial notes, and Centura made demand on both Executive and Killian for payment pursuant to the terms and conditions of the notes and the guaranty. Still, Executive and Killian failed to make any payments on their obligations to Centura. Centura filed a complaint against both Executive and Killian on 28 January 1997 for non-payment of sums owed to Centura. At the time of filing, payment was due and owing to Centura in the amount of $452,779.52 on the line of credit and $66,448.00 on the working capital loan.

In their joint answer to Centura's complaint, Executive admitted that it executed the notes and that it "owe[d] Plaintiff a sum of money." Killian also admitted executing the guaranty, but asserted, among other defenses, that Centura procured his signature on the guaranty through fraud and/or misrepresentation as to the nature and

effect of the instrument. On 9 January 1998, Centura filed a motion for summary judgment. After reviewing the pleadings and other matters of record and hearing oral arguments, the trial court entered an order granting summary judgment to Centura on 12 March 1998. Defendants filed timely notice of appeal.

---

The sole issue presented by this appeal is whether the trial court erred in granting summary judgment to Centura on its suit against Killian as guarantor of the sums owed by Executive under the notes. Killian claims that summary judgment was improperly awarded, because a question of fact remains as to whether Centura misrepresented the terms of the guaranty such that Killian did not fully understand his obligations under the instrument. We must disagree.

Summary judgment is appropriate when the pleadings, depositions, affidavits, answers to interrogatories, admissions and other evidence establish the absence of any genuine issue of material fact and the moving party's entitlement to judgment as a matter of law. *Yamaha Corp. v. Parks*, 72 N.C. App. 625, 325 S.E.2d 55 (1985); N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). As our courts have held,

> "An issue is material if the facts alleged would constitute a legal defense, or would affect the result of the action, or if its resolution would prevent the party against whom it is resolved from prevailing in the action. The issue is denominated 'genuine' if it may be maintained by substantial evidence."

*Northwestern Bank v. Roseman*, 81 N.C. App. 228, 231, 344 S.E.2d 120, 123 (1986), *aff'd*, 319 N.C. 394, 354 S.E.2d 238 (1987) (quoting *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972)).

In the present case, Killian does not dispute that he signed the Unconditional Guaranty or that, under its terms, he guaranteed payment of the balances due Centura under the notes executed by Executive. Killian, instead, contends that his signature on the guaranty was obtained fraudulently. To establish the defense of fraud, Killian was required to produce a forecast of evidence showing the following: " '(1) [A] [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party.' " *Id.* at 231, 344 S.E.2d at 123 (quoting *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974)). It was also

incumbent on Killian to show that he reasonably relied on the false representation. *Id.*

After carefully examining the record, we conclude that Killian failed to forecast evidence that would sustain his burden of proof on the issue of whether he was fraudulently induced to sign the guaranty. Although Killian asserts that Centura and Phillips misrepresented the nature of the 1994 Agreement, of which the guaranty was a part, he cannot point to any false or misleading statements made by Centura or Phillips which were reasonably calculated to trick him into signing the guaranty. Killian argues, instead, that he failed to read the guaranty before signing it, because he assumed that "the documents that he was signing were similar in nature and carried the same consequences as others he had signed in past dealings with Phillips." Relying on this Court's decision in *Roseman*, 81 N.C. App. 228, 344 S.E.2d 120, Killian contends that Centura and Phillips had an affirmative duty to explain his obligations under the Unconditional Guaranty. This contention is without merit.

In *Roseman*, we stated the following:

[E]ven though a creditor and a guarantor are not in a fiduciary relationship, the obligation of good and fair dealing imposes a duty on the creditor to disclose material facts that the guarantor is unlikely to discover. This duty arises when the creditor knows or has grounds to believe that the guarantor is being misled or "induced to enter into the contract in ignorance of facts materially increasing the risks," and the creditor has the opportunity to inform the guarantor. In such a case, "non-disclosure would in effect amount to a contrary representation to the [guarantor]." "Where there is a duty to speak, fraud can be practiced by silence as well as by a positive misrepresentation."

*Id.* at 232, 344 S.E.2d at 123-24 (quoting *First-Citizens Bank and Trust Co. v. Akelaitis*, 25 N.C. App. 522, 526, 214 S.E.2d 281, 284 (1975)).

In the record before the trial court, there was no evidence that Centura knew or had reason to believe that Killian was being misled or that he was induced to execute the guaranty in ignorance of its terms. Furthermore, contrary to Killian's contention, the evidence reveals that prior to entering into the 1994 Agreement, he knew that its terms would be different than those of the 1984-85 Agreements. In

arguments before the trial court, Killian's attorney conceded that when Killian approached Phillips in 1994 about making the same deal that the parties had under the 1984-85 Agreements, Phillips refused, stating that it did not want to guarantee collection on Executive's accounts receivable. While Phillips was willing to factor the accounts, it was not willing to advance any money on the accounts until payment was actually received on the invoices or until 90 days after the invoices were generated. To address Executive's immediate need for funds, Phillips proposed that Executive obtain a loan from Centura and Phillips agreed to make payments on the loan from the monies received on the factored accounts. Thus, Killian was aware that the 1994 Agreement was significantly different from the 1984-85 Agreements, and it was unreasonable for him to assume that his rights and responsibilities would remain the same under the new agreement. Because Centura and Phillips had no cause to know that Killian did not appreciate the terms and consequences of the guaranty, they were under no duty to speak. The trial court, therefore, was correct in concluding that the evidence presented no genuine issue of material fact and that Centura was entitled to judgment as a matter of law.

In sum, because the evidence, when considered in the light most favorable to Killian, failed to raise an issue of material fact as to whether his signature on the Unconditional Guaranty was procured by the fraudulent acts of Phillips or Centura, the trial court correctly entered summary judgment for Centura. The order of the trial court is, therefore, affirmed.

Affirmed.

Judges MARTIN and HUNTER concur.